Lloyd S. Mann, Esq., (State Bar No. 108527)
**LAW OFFICES OF MANN & ZARPAS, LLP**
15233 Ventura Boulevard, Suite 714
Sherman Oaks, California 91403
Telephone:  (818) 789-0510
Facsimile:  (818) 789-0518

Attorneys for Defendants,
LOWELL SHARRON and
BEYOND BASICS, LLC dba DAILY THREADS

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>L. SCOTT APPAREL, INC.,<br><br>Debtor.<br><br>―――――――――――――――<br><br>HOWARD GROBSTEIN as Liquidating Trustee of L. Scott Apparel Inc.,<br><br>Plaintiff,<br><br>v.<br><br>LOWELL S. SHARRON, an individual; BEYOND BASICS, LLC dba DAILY THREADS, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants.<br>――――――――――――――― | Case No. 2:13-bk-26021-RK<br><br>Chapter 11<br><br>Adv. No. 2:15-ap-01122-RK<br><br>**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**<br><br>Trial<br><br>Date: August 18, 2016<br>Time: 9:00 a.m.<br>Room: 1675<br>Judge: Hon. Robert N. Kwan |

## I.
## INTRODUCTION

After the completion of the trial in this action, the Court issued a Scheduling Order for the filing by the parties of proposed Findings of Fact and Conclusions of Law.("FOF") The plaintiff was to, and did, submit his FOF first, and the defendants were then given an opportunity to file

**TABLE OF CONTENTS**

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

I.  INTRODUCTION .................................................. 1

II. THE FACTORS USED BY COURTS IN DETERMINING THE ISSUE OF ALTER EGO PRIMARILY FAVOR SHARRON AND NOT THE PLAINTIFF ........................... 3

III. THE VARIOUS FACTORS USED BY COURTS IN ALTER EGO CASES REQUIRE THIS COURT TO FIND AGAINST FINDING ALTER EGO ............................. 7

IV. CONCLUSION ................................................... 13

# TABLE OF AUTHORITIES

CASES                                                                                              Page

Las Palmas Associates v. Las Palmas Center Associates,
   (1991) 235 Cal. App. 3d 1220 .................................................. 3

Cascade Energy and Metals Corp. v. Banks,
   (1990) 896 F.2d 1557, 1576 ..................................................... 3

Tomaselli v. Transamerica Ins. Co.,
   (1994) 25 Cal.App.4th 1269, 1285 ............................................. 3

Mesler v. Bragg Management Co.,
   (1985) 39 Cal.3d 290, 301 ........................................................ 3

Clejan v. Reisman,
   (1970) 5 Cal. App. 3d 224, 239 .................................................. 3

Associated Vendors, Inc. v. Oakland Meat Co.,
   (1962) 210 Cal. App. 2d 825, 838 ............................................... 3

Minton v. Cavaney,
   56 Cal.2d 576, 579-580 ............................................................ 3

Automotriz etc. De California v. Resnick,
   47 Cal.2d 792, 796-798 ............................................................ 3

Shea v. Leonis,
   14 Cal.2d 666 [96 P.2d 332] ..................................................... 3

Carlesimo v. Schwebel,
   87 Cal.App.2d 482 [197 P.2d 167] ............................................. 3

Ballantine, Corporations,
   (rev. ed. 1946) § 129, pp. 302-303 ............................................. 3

Laird v. Capital Cities/ABC Inc.,
   (1998) 68 Cal. App. 4th 727, 742 ............................................... 4

American Home Ins. Co. v. Travelers Indemnity Co.,
   (1981) 122 Cal. App. 3d 951 .................................................... 4

Meyer v. Glenmoor Homes, Inc.,
   (1966) 246 Cal.App.2d 242, 260-261 ......................................... 4

RXX v. Lab-Con, Inc.,
   (1985) 772 F.2d 543, 545 (9th Cir.) ............................................ 4

Orloff v. Allman,
   (9th Cir. 1987), 819 F.2d 904 .................................................... 4

SEC v. Hickey,
   (9th Cir. 2003) 322 F.3d 1123 .................................................... 5

Sonora Diamond v. Superior Court,
    (2000) 83 Cal. App. 4th 523) .................................................. 5

Pacific Bell Telephone Company v. 88 Connection Corporation,
    (2016) U.S. Dist. Lexis 77345 .................................................. 5

Automotriz del Golfo de Cal. S.A. de CV. v. Resnick,
    (1957) 47 Cal. 2d 792 .......................................................... 5

Associated Vendors, Inc. v. Oakland Meat Co.,
    210 Cal.App.2d 825, 837-838 .................................................... 6

Morrison Knudsen Corp. v. Hancock, Rothert & Bunshof,
    (1999) 69 Cal.App.4th 223, 249-250 ............................................. 7

Associated Vendors, Inc. v. Oakland Meat Co.,
    (1962) 210 Cal.App.2d 825, 838-840 ............................................. 7

Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.,
    (2002) 99 Cal.App.4th 228, 245 ................................................. 7

Virtualmagic Asia, Inc. v. FilCartoons, Inc.,
    supra, 99 Cal.App.4th at p. 245 ................................................ 7

Jack Farenbaugh & Son v. Belmont Const., Inc.,
    (1987) 194 CA3d 1023 .......................................................... 11

Cascade Energy & Metals Corp. v. Banks,
    (1990) 896 F.2d 1557 .......................................................... 11

Law Offices
MANN & ZARPAS, LLP
15233 VENTURA BOULEVARD, SUITE 714
SHERMAN OAKS, CALIFORNIA 91403

both objections to the plaintiff's FOF and their own proposed FOF. The defendants filed a proposed FOF. The plaintiff then had the right, pursuant to the scheduling order, to file an objection to the defendants' proposed FOF, but, instead, filed a 35 page "Reply" brief. The defendants objected to what they believed was an unauthorized filing, and, in response, the Court authorized the defendants to file a surreply. The court indicated that a brief that included an analysis of the issue of alter ego would be especially helpful. As a result, this brief will focus on the issue of alter ego.

Although the plaintiff pursued, up to the pre-trial statement, three separate theories of alter ego, i.e., L. Scott Apparel, Inc. ("L. Scott") was the alter ego of Beyond Basics, LLC, ("Beyond Basics"), Sharron was the alter ego of L. Scott Apparel, and Sharron was the alter ego of Beyond Basics, the plaintiff ultimately only pursued the allegation that Sharron was the alter ego of Beyond Basics.

There is a strong presumption against a finding of alter ego. Indeed, the courts view the alter ego doctrine as a drastic remedy, and will only disregard the corporate form reluctantly, cautiously, and rarely. This is because the law specifically permits owners to incorporate a business for the very purpose of shielding themselves from the liabilities of those entities. The burden of a plaintiff attempting to establish alter ego is a substantial one which has not been met in this case.

In the final analysis, the plaintiff made little effort to prove a case of alter ego. It is true that an expert witness was hired, but the witness merely made a conclusory statement, in his reports, that the capitalization was inadequate, and, to make matters worse, from the plaintiff's perspective, then merely mentioned that Beyond Basics lost money during its relatively short existence without offering any evidence for the proposition that the alleged inadequacy of capitalization had anything to do with the inability of Beyond Basics to pay its creditors. New companies lose money for years at a time, all the time, but that is not equal to a finding of inadequate capitalization.

///

///

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

## II.

## THE FACTORS USED BY COURTS IN DETERMINING THE ISSUE OF ALTER EGO PRIMARILY FAVOR SHARRON AND NOT THE PLAINTIFF

As set forth above, the imposition of alter ego must be approached with great caution. This is because the law recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation. Las Palmas Associates v. Las Palmas Center Associates, (1991) 235 Cal. App. 3d 1220. (Also citing Cascade Energy and Metals Corp. v. Banks (1990) 896 F.2d 1557, 1576., "....corporate veils exist for a reason and should be pierced only reluctantly and cautiously. The law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities").

Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to a third person." (Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1285.) "The essence of the alter ego doctrine is that justice be done. . . . Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." (Mesler v. Bragg Management Co. (1985) 39 Cal.3d 290, 301.)

In closing arguments, plaintiff asserted that bad faith was not a necessary finding in order to allow the court to impose the alter ego doctrine. In fact, while it is true that the alter ego doctrine does not require the presence of actual fraud, it is a theory and doctrine that was created to prevent what would be fraud or injustice if carried out. Hence, it follows that bad faith in some form is an underlying consideration and will have to be found, one way or another, in any case where the court decides that the corporate entity should be disregarded. Clejan v. Reisman (1970) 5 Cal. App. 3d 224, 239; Associated Vendors, Inc. v. Oakland Meat Co. (1962) 210 Cal. App. 2d 825, 838. Indeed, from a practical point of view, very often, fraud, itself, would have to be present in order to justify a court applying the alter ego doctrine. As set forth in the Clejan case:

"...with respect to the cases that pertain to the effect of inadequate capitalization, we find a common factual situation, an attempt to escape liability by the incorporators or shareholders. The element of fraud is present. (Citing also, Minton v. Cavaney, 56 Cal.2d 576, 579-580; Automotriz etc. De California v. Resnick, 47 Cal.2d 792, 796-798; Shea v. Leonis, 14 Cal.2d 666 [96 P.2d 332]; Carlesimo v. Schwebel, 87 Cal.App.2d 482 [197 P.2d 167]; Ballantine, Corporations (rev. ed. 1946) § 129, pp. 302-303.)

Numerous other cases demonstrate the necessity for a showing that the shareholder has engaged in some type of bad or wrongful conduct in order for the alter ego theory to be applied. In Laird v. Capital Cities/ABC Inc. (1998) 68 Cal. App. 4th 727, 742, the plaintiff failed to show specific "manipulative conduct" by parent toward subsidiary which relegated the subsidiary to being classified as a mere instrumentality, agency, conduit, or adjunct of parent. In American Home Ins. Co. v. Travelers Indemnity Co. (1981) 122 Cal. App. 3d 951, the alter ego doctrine was rejected despite numerous factors indicating ownership and control of one alleged alter ego over the other.

The American Home case ruled:

"The corporate entity is disregarded to prevent fraud or an injustice, not to inflict an obligation on an innocent corporation. (Meyer v. Glenmoor Homes, Inc. (1966) 246 Cal.App.2d 242, 260-261; (Citing also 6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 6, p. 4318.) The fraud or inequity sought to be eliminated must be that of the party against whom the alter ego doctrine is invoked, and "such party must have been an actor in the course of conduct constituting the 'abuse of corporate privilege' . . ." "... No such circumstances exist in this case..."

It is true that there are 9th circuit cases that hold that bad faith is not a requirement for a finding of alter ego. Those cases, however, such as RXX v. Lab-Con, Inc. (1985) 772 F.2d 543, 545 (9th Cir.), do not closely mirror the facts of this case. In fact, in RXX, the decision that the trial court's ruling that the shareholder was the alter ego of the corporation should not be reversed was based upon the fact that the shareholder was the president and only officer, director, and shareholder of the corporation and had no Board of Directors. Beyond Basics, on the other hand, was a properly set up limited liability company, (formed by Buchalter Nemer), all of the documents necessary to form a limited liability company were prepared, including the Unanimous Written Consent of the Managers of Beyond Basics, and Sharron was one of three partners. Moreover, even 9th circuit cases that specifically state that "bad faith" is not a requirement for an alter ego finding, at the same time, do not ignore the motives of the shareholders/incorporators. For example, in the post RXX case of Orloff v. Allman (9th Cir. 1987), 819 F.2d 904, the Court, while ruling that "bad faith" was not required also said:

" To determine whether stockholders are personally liable for the debts of their corporations, this court relies on three factors: the amount of respect given to the separate identity of the corporation by its shareholders, <u>the fraudulent intent of the incorporators</u>, and the degree

-4-

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

of injustice visited on the litigants by recognition of the corporate entity." (Emphasis Added)

Another 9th Circuit case, <u>SEC v. Hickey</u>, (9th Cir. 2003) 322 F.3d 1123, put it this way, after saying that no finding of bad faith was necessary for an alter ego finding :

> But these courts also state that "there are, nevertheless, two general requirements": ownership and the <u>specter of fraud</u>. (Citing, among other cases, <u>Sonora Diamond v. Superior Court</u>, (2000) 83 Cal. App. 4th 523).[1]

In summarizing California law regarding the relationship between bad faith and a finding of alter ego, the court, in <u>Pacific Bell Telephone Company v. 88 Connection Corporation</u>, (2016) U.S. Dist. Lexis 77345, pointed out that in <u>Automotriz del Golfo de Cal. S.A. de CV. v. Resnick</u> (1957) 47 Cal. 2d 792, the California court was silent on the issue of a bad faith requirement. However, even in the <u>Resnick</u> case, the court said that various factors could lead to a finding that "...such corporation may exist merely to serve the interests of another -- a corporation or an individual." (40 Cal.App.2d at p. 682.) Thus, <u>Resnick</u>, although not specifically requiring a finding of bad faith, nevertheless makes clear that even where courts do not require bad faith evidence to support a finding of alter ego, there does have to be a finding that something so wrong occurred in the founding and maintenance of a corporation, to the point where the corporation's existence was designed to disrespect creditors to the point where there is a finding that the corporation existed simply to serve the interests of the shareholders.

Thus, even if this Court is not required to find that Sharron acted in bad faith in certain respects, a finding of alter ego would not be appropriate unless the Court can find that Sharron (who had two partners) set up Beyond Basics to be unfair to creditors (as opposed to be shielded from personal liability, which, as described herein, is completely legitimate and is one of the purposes of corporations and limited liability companies). The evidence was clear and substantial as to what Sharron's motivations were in establishing Beyond Basics, and why he, in good faith, believed that it would be a "win-win" situation for both L. Scott and Beyond Basics.

Moreover, the plaintiff also seemed to assert throughout trial and closing arguments that

---

[1] The <u>Sonora</u> case said "Under the alter ego doctrine...when the corporate form is used to <u>perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose</u>, the courts will ignore the corporate entity..." (Emphasis Added)

Sharron was the alter ego of Beyond Basics because he, as a majority owner, allegedly controlled Beyond Basics, but this also misstates the alter ego doctrine. The fact that a corporation, or limited liability company, is influenced, governed, or even controlled by one shareholder/member over another is not the same as saying that there is a "unity of interest and ownership". As set forth in the <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 210 Cal.App.2d 825, 837-838:

> "Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is <u>not only influenced and governed by that person</u>, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." (Emphasis Added)

The plaintiff in this case tried to assert that because Sharron made many of the decisions regarding Beyond Basics, or even all of the financial related decisions, that there was "such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased."[2] Again, this is a misunderstanding of the law. Majority shareholders very often make most or all of the decisions in small corporations, and, if governing or influencing a corporation were the standard used in finding alter ego, most small corporations would easily wind up being disregarded instead of the reality, which is that a finding of alter ego is rare. Instead, it is not the control of the corporation that matters, it is whether there is "such a unity of interest" and that can only be found after a court evaluates the various tests set forth in the <u>Associated Vendors</u> case.

---

[2] The plaintiff even tried to prove this by referring to Sharron's use of the Beyond Basics tax loss for his personal tax returns. However, this ignores the fact that the evidence of this included Plaintiff's Exhibit 98, which was an email from Jamara Ghalayini, Sharron's Beyond Basics' partner, in which she said that she had absolutely no objection to Sharron taking the tax loss. She said, "I don't disagree with the principle-perhaps you didn't read my emails previously where I stated that." Ms. Ghalayini was responding to Sharron's email in which he reminded her that it was appropriate for him to take the tax losses when he was the one who was putting all of the money into Beyond Basics. The Plaintiff also offered another exhibit that supports Sharron's position in this case, (plaintiff's exhibit 101). In that email, Ms. Ghalayini says, "Just heard back from Riad that she is okay with the losses all going to Lowell only. I have written confirmation from her to delegate all losses to Lowell so you can proceed with finishing the k-1....Of course this serves as my Ok to proceed too. Just in case you needed that formal written clarification."

## III.

## THE VARIOUS FACTORS USED BY COURTS IN ALTER EGO CASES REQUIRE THIS COURT TO FIND AGAINST FINDING ALTER EGO

The plaintiff's argument in favor of finding alter ego as between Beyond Basics and Sharron (not Sharron and L. Scott, or L. Scott and Beyond Basics) was essentially that Sharron controlled and influenced Beyond Basics. That is not enough for a finding of alter ego. The Court has to evaluate the factors to find not control and influence, but unity of interests. The enumerated factors may be considered "under the particular circumstances of each case. " (Morrison Knudsen Corp. v. Hancock, Rothert & Bunshof (1999) 69 Cal.App.4th 223, 249-250, (citing Associated Vendors, Inc. v. Oakland Meat Co. (1962) 210 Cal.App.2d 825, 838-840; see also Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc. (2002) 99 Cal.App.4th 228, 245.) "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." (Virtualmagic Asia, Inc. v. FilCartoons, Inc., supra, 99 Cal.App.4th at p. 245.)

Sharron does not deny, and has no reason to deny, that he influenced and controlled Beyond Basics in the manner a chairman or executive would typically influence and control a small corporation or limited liability company. However, in short, that does not show that Sharron controlled Beyond Basics in such a way as to commit fraud or other misdeeds against L. Scott, or others, nor does it show that Sharron influenced and controlled Beyond Basics to the extent that the separate personalities of Sharron and Beyond Basics did not exist. It also does not demonstrate that L. Scott's s agreements with Beyond Basics were in reality agreements with Sharron, the individual. (i.e., the Shared Services Agreement between L. Scott and Beyond Basics).

The following tests are used by the Courts:

1. <u>Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses.</u>

There was no evidence at trial that Sharron commingled funds or assets between himself and Beyond Basics. To establish this element, it would have been incumbent upon the

plaintiff to show that Sharron used Beyond Basic funds to pay for personal obligations. At trial, there was no evidence introduced by the plaintiff, such as the QuickBooks data for Beyond Basics, which showed that the funds and assets of Beyond Basics were used for anything other than running Beyond Basics. There was no evidence that Sharron used Beyond Basics' account for personal money of Sharron to be placed for any purpose such as shielding it from others. There was no evidence introduced at trial that suggested that the corporate funds or assets of Beyond Basics were used for payment of any obligation not related to Beyond Basics. With respect to this factor, there can be no finding other than the fact that the plaintiff did not offer any evidence to support a finding that this factor is in favor of plaintiff.

2. <u>Treatment by an individual of the assets of the corporation as his own (e.g., paying personal debts with corporate funds</u>

At no time was <u>any</u> evidence introduced that supported the notion that personal debts were paid by the Corporation.

3. <u>Failure to obtain authority to issue stock</u>

The only evidence introduced on this point was the formation documentation with respect to Beyond Basics. The evidence established that Beyond Basics was formed by the Buchalter Nemer firm. There was no evidence introduced, or assertions made, that the limited liability company was not properly formed.

4. <u>An individual stating that he or she will be liable for the debts of the corporation</u>

The plaintiff never introduced any evidence that Sharron ever represented to anyone that he would be personally liable for the debts of Beyond Basics. This assertion was not made, and no evidence was offered, in this respect, because nothing like this ever happened.

5. <u>Failure to follow corporate technicalities, such as maintaining records, holding board or shareholder meetings, or having officers;</u>

The Corporation kept records appropriate for its business and size. This included, as demonstrated at trial, the Unanimous Written Consent of the Managers of Beyond Basics which was prepared at the creation of the LLC. The Written Consent was signed by both Sharron and Ms. Ghalayini. Records were also kept that showed all of the funds that were collected by

Beyond Basics and any funds that were paid out by Beyond Basics. At no time was there any evidence or suggestion of evidence offered by plaintiff that the Beyond Basics records were not accurate.

6. <u>When two corporations are claimed to be alter egos, both corporations having identical owners, directors and officers</u>

Because the plaintiff abandoned the claim that L. Scott and Beyond Basics were the alter egos of each other this particular factor is no longer relevant even though previous pleadings discuss, and the evidence at trial, show that the shareholders of L. Scott were different from the members of Beyond Basics.

7. <u>Same office or business location</u>

This is also a factor that is no longer relevant because of the fact that the plaintiff abandoned his claim of alter ego as between L. Scott and Beyond Basics.

8. <u>Employment of the same employees and/or attorney</u>

This is also a factor that is no longer relevant because of the fact that the plaintiff abandoned his claim of alter ego as between L. Scott and Beyond Basics. (although, at trial, the evidence was that L. Scott and Beyond Basics had different attorneys)  To argue that some Beyond Basic work was performed by L. Scott employees makes no sense with respect to an assertion that Sharron (not L. Scott) was the alter ego of Beyond Basics. The fact that Sharron may have influenced L. Scott to enter into an agreement with Beyond Basics for the use of employees of L. Scott does not have anything to do with the separateness as between Beyond Basics and Sharron.

9. <u>Failure to adequately capitalize a corporation, the total absence of corporate assets, and undercapitalization</u>

The evidence at trial was that Beyond Basics was capitalized primarily through funds from Sharron. (The funds technically came directly from L. Scott, but those funds were documented in the L. Scott books and records as a personal obligation of Sharron in the "Due from Officers Account").

The plaintiff, however, made little effort to establish that the funds placed into Beyond Basics constituted inadequate capitalization. At no time was any evidence offered that would have established, by a preponderance of the evidence, that the amount of funds used to capitalize Beyond Basics was the reason that Beyond Basics was not able to pay its debt to L. Scott. The only attempt at arguing inadequate capitalization was the reports offered by the plaintiff's discredited expert witness who merely concluded that the capitalization was inadequate. However, at no time, was a persuasive analysis offered by the plaintiff as to why the funds put into Beyond Basics constituted inadequate capitalization. To conclude (without and before an thorough analysis) that Beyond Basics was undercapitalized, and then also conclude, also without an analysis of the facts, that the alleged undercapitalization was the reason it could not pay its creditors is not enough. A successful assertion of inadequate analysis would consist of more than a statement by an expert witness that the money invested at the outset was "inadequate", and that the company, in the several years it was in business before the L. Scott involuntary bankruptcy, lost money. Many businesses lose money during their first several years, and that does not mean that the capitalization was inadequate. If that were the case, everyone corporation that goes out of business would be an automatic alter ego finding. All parties involved knew that Beyond Basics was a startup and that recovery from Beyond Basics during its early years was not likely. The capitalization of Beyond Basics had nothing to do with its inability to pay L. Scott, and certainly this was never proven or established by the plaintiff, through its expert witness or through any other efforts. The fact that ultimately economic events and the involuntary bankruptcy of L. Scott ended the possibility that Beyond Basics could achieve what the LLC members had hoped it would achieve, does not establish undercapitalization in this instance for alter ego purposes.

This is especially true in view of California law as set forth herein in the Clejan case:

"...with respect to the cases that pertain to the effect of inadequate capitalization, we find a common factual situation, an attempt to escape liability by the incorporators or shareholders. The element of fraud is present." (Emphasis Added)

In no event can anyone argue that fraud was present in the case of Sharron's capitalization of Beyond Basics. Everything was out in the open for all to see. The Shared Services Agreement

was drafted by experienced attorneys at the Buchalter Nemer firm, and Sharron never misrepresented the financial condition of Beyond Basics, or what its goals were, and/or what it was capable of doing as opposed to what it hoped to be able to accomplish in the years ahead.

Inadequate capitalization would be more likely to be found in a situation similar to what occurred in Jack Farenbaugh & Son v. Belmont Const., Inc. (1987) 194 CA3d 1023, where the organizers of a corporation reduced a corporation to a mere shell by stripping it of its assets. Many businesses struggle, and are unable to pay their bills. The plaintiff has not provided any evidence, other than meaningless conclusory statements that there was inadequate capitalization and that the company did not earn a profit in the limited amount of time that it was in business. That is not the equivalent of inadequate capitalization.

Moreover, there is authority for the proposition that courts are more likely to find the "injustice" required for alter ego in tort situations rather than for contractual type matters. This was the case in Cascade Energy & Metals Corp. v. Banks (1990) 896 F.2d 1557. The rational for this is that the alter ego analysis is going to differ where the claim is based on consensual dealings with the corporation as distinguished from claims arising from nonconsensual transactions. As set forth in Cascade:

> The obvious difference between consensual and nonconsensual transactions is that the claimants in consensual transactions generally have chosen the parties with whom they have dealt and have some ability, through personal guarantees, security agreements, or similar mechanisms, to protect themselves from loss. For example, the fact that a company is undercapitalized can be overcome in many contractual settings, because the parties can allocate the risk of financial failure as they see fit. But in nonconsensual cases, there is "no element of voluntary dealing, and the question is whether it is reasonable for businessmen to transfer a risk of loss or injury to members of the general public through the device of conducting business in the name of a corporation that may be marginally financed."

The plaintiff seeks to hold Sharron liable in the case herein based upon the account stated and other quasi-contractual claims for relief as opposed to a particular type of tort cause of action. In such a case, the courts will make it much more difficult, for the reasons explained in Cascade, to find alter ego liability.

10. <u>Concealment or misrepresentation of the identity of the responsible ownership, management and financial interest</u>

There was no evidence of this type introduced by plaintiff at trial.

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

11. <u>Diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors</u>

Again, the claim that Sharron was the alter ego of L. Scott was abandoned by plaintiff so this factor is somewhat irrelevant although there was no evidence offered at trial that Sharron attempted to divert assets from Beyond Basics so that creditors, such as L. Scott, would not be able to reach them. There was no such evidence or testimony.

12. <u>Manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another</u>

Again, the assertion that two entities (L. Scott and Beyond Basics) were the alter egos of each other has been dropped. In any event, however, there was ever any evidence offered that there was any "manipulation" of assets. Whatever belonged to Beyond Basics belonged to it, and whatever belonged to Sharron belonged to him. There was no evidence that was offered to show that Beyond Basics had assets which were removed by Sharron to the detriment of creditors, including L. Scott, or that anyone liability was transferred to Beyond Basics to make it more difficult for creditors to enforce their rights as to Beyond Basics.

13. <u>Contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability</u>

No evidence of this type was introduced by plaintiff at time of trial.

14. <u>Use of a corporation as a subterfuge of illegal transactions</u>

No evidence of this type was introduced by plaintiff at time of trial. There were no illegal transactions involving Beyond Basics.

15. <u>Formation and use of a corporation to transfer to it the existing liability of another person or entity</u>

Sharron testified at length regarding why Beyond Basics was formed. At no time was any evidence offered to establish that Beyond Basics was in fact formed or used for purposes of transferring the liabilities of him, or anyone or any other entity, for that matter, to Beyond Basics.

///

-12-

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

## IV.

## CONCLUSION

The case started with allegations that Sharron was the alter ego of L. Scott, that L. Scott was the alter ego of Beyond Basics, and vice versa, and that Beyond Basics and Sharron were alter egos of each other. It ended with the plaintiff abandoning the first two theories and attempting to prove the third. However, the plaintiff offered no evidence that Sharron was the alter ego of Beyond Basics. Sharron influenced Beyond Basics, but in no way was that different from the influence and control that any executive and majority owner would have over a small limited liability company. However, having control and influence over a company is completely different from establishing a unity of interest and that has not been established by the plaintiff.

The truth is that the plaintiff made no credible effort to establish that Sharron was the alter ego of Beyond Basics. The plaintiff's efforts to prove inadequacy of capital is a perfect example of that. The plaintiff had an expert reach a conclusion of inadequacy of capital without any analysis as to why the initial capital investment was inadequate, and then followed that with the assertion that the company lost money for its several year existence, but never once bothered to tie the failure to make a profit in a relatively short period of time with the amount of capital invested in the company.

Sharron is not the alter ego of Beyond Basics.

DATED: January 6, 2017

LAW OFFICES OF MANN & ZARPAS, LLP


/s/ Lloyd S. Mann
Lloyd S. Mann (SBN 108527)
Attorneys for Defendants

**DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**15233 Ventura Boulevard, Suite 714, Sherman Oaks, California 91403**

A true and correct copy of the foregoing document entitled (*specify*):   **DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 6, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brian L. Davidoff bdavidoff@greenbergglusker.com
kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
Courtney E. Pozmantier cpozmantier@greenbergglusker.com
Lori L. Werderitch lwerderitch@greenbergglusker.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On January 6, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 6, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Robert N. Kwan
United States Bankruptcy Court
Central District of California
Edward R. Royal Federal Building and Courthouse
255 E. Temple Street, Suite 1682 / Courtroom 1675
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 6, 2017 | Lloyd S. Mann | /Lloyd S. Mann/ |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012     **F 9013-3.1.PROOF.SERVICE**