BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiff Howard Grobstein as
Liquidating Trustee of L. Scott Apparel Inc.
Bankruptcy Liquidating Trust

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:13-bk-26021-RK |
| L. SCOTT APPAREL, INC., | Chapter 11 |
| Debtor. | |
| HOWARD GROBSTEIN as Liquidating Trustee of L. Scott Apparel Inc., | Adv. No. 2:15-ap-01122-RK |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT** |
| v. | **Trial Date:** |
| LOWELL S. SHARRON, an individual; BEYOND BASICS, LLC dba DAILY THREADS, a California limited liability company; and DOES 1-10, inclusive, | Date: August 18, 2016<br>Time: 9:00 a.m.<br>Courtroom: 1675<br>Judge: Hon. Robert N. Kwan |
| Defendants. | |

### A. <u>Introduction</u>

At the conclusion of the oral closing argument in this case, Defendants requested the right to file an additional pleading to Plaintiff's Reply to Defendants' Proposed Finding of Fact and Conclusion of Law, asserting that Plaintiff's Reply went beyond the scope of the permitted filing. For the reasons set forth in Plaintiff's Opposition to Defendants Objection [Docket 153], Plaintiff vigorously disagreed and so the Court permitted Defendants to file their Surreply After Oral

Argument ("Surreply") [Docket No. 167] and also allowed Plaintiff to file a response to the Surreply ("Response") if Plaintiff believed it necessary. No timeline was set for filing the Response. There are sufficient inaccuracies in Defendants Surreply that Plaintiff is compelled by this Response to bring these to the Court's attention.

### B. Legal Response

#### 1. No requirement for "bad faith" finding.

One of the only accurate statements of law Defendants make in the Surreply is that "bad faith" is not a requirement for a finding of alter ego. *See e.g. Clejan v. Reisman*, 5 Cal. App. 3d 224, 239 (1970*)* ("the [alter ego] doctrine does not depend on the presence of actual fraud"). Thereafter, however, Defendants attempt to confuse the issue by adding entirely new elements to an alter ego claim, which lack any basis under California or Ninth Circuit Authority. Specifically, Defendants assert: (1) "there does have to be a finding that something so wrong occurred in the founding and maintenance of a corporation." Surreply 5:15-16; and (2) "a finding of alter ego would not be appropriate unless the Court can find that Sharron…set up Beyond Basics to be unfair to creditors." Surreply 5:20-21.  Neither finding is required to be made by the Court in order to determine that Sharron is the alter ego of Beyond Basics.

As to Defendants' first new element requiring "something so wrong" Defendants base this conclusion on the case of *Automotriz, etc., De California, etc. v. Resnick*, 47 Cal.2d 792 (1957). Curiously, Defendants make this assertion even after acknowledging that the court in *Resnick* was "silent on the issue of a bad faith requirement." Surreply 5:9-10.  Indeed, the term "bad faith" is not even utilized by the California Supreme Court in the *Resnick* opinion. *See generally id.* Rather than standing for the proposition that "something so wrong" must have occurred to find alter ego, *Resnick* is consistently cited for the proposition that the "[c]onditions under which a corporate entity may be disregarded vary according to the circumstances in each case" resulting in a variety of factors being considered. *Clejan*, 5 Cal. App. 3d at 239, citing *Resnick*, 47 Cal.2d at 796.  The statement in *Resnick* on which Defendants rely—that a "corporation may exist merely to serve the interest of another"—was part of the *Resnick* court's consideration under one of *Associated Vendors* nonexclusive factors of failure to issue stock (or seek authorization to do

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

32936-00002/2741067.1    2    PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT

1 so). *See Resnick*, 47 Cal.2d at 796.

2 Defendants' second new element of alter ego—that Sharron "set up Beyond Basics to be
3 unfair to creditors"—is also without any authority. Rather, it is well established that the second
4 basic requirement of alter ego in California is outcome-focused—that "an inequitable result will
5 *follow*" if the acts are treated of the corporation alone. *See e.g. Resnick*, 47 Cal.2d at 796
6 (emphasis added); *Orloff v. Allman*, 819 F.2d 904, 908–09 (9th Cir. 1987). The focus is not on
7 the purpose of the formation itself, but on the inequity resulting from maintaining the corporate
8 form. The Court may find such an inequitable result based on an amalgam of factors in any given
9 case, such as inadequate capitalization of the corporation. *See Resnick*, 47 Cal.2d at 797.

10 Even as Defendants' equivocal Surreply acknowledges that bad faith is not a necessary
11 element of alter ego, it urges at the same time that "some type of bad or wrongful conduct" should
12 be part of any alter ego finding. Surreply 4:3. This necessitates a degree of clarification of the
13 law on alter ego and its relation to bad faith or wrongful conduct. The "doctrine [of alter ego] is
14 essentially an equitable one and … [thus] [o]nly general rules may be laid down for guidance."
15 *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962); *See also*
16 *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 539 (2000) (stating that "the
17 courts must look at all the circumstances to determine whether the doctrine should be applied").
18 There are only two general rules of alter ego: "(1) such a unity of interest and ownership exists
19 that the personalities of the corporation and individual are no longer separate, and (2) an
20 inequitable result will follow if the acts [giving rise to liability] are treated as those of the
21 corporation alone." *Orloff*, 819 F.2d at 908-09, quoting *RRX Industries, Inc. v. Lab-Con, Inc.*, 772
22 F.2d 543, 545 (9th Cir.1985). It is the under the second general rule of alter ego—an "inequitable
23 result" following—that court may, but is not required, to consider any sort of bad faith or
24 wrongful conduct of a defendant. This outcome-oriented doctrine "is designed to prevent what
25 would be fraud or injustice, if accomplished" but "does not depend on the presence of actual
26 fraud" or misconduct. *Clejan*, 5 Cal. App. 3d at 239. Just because some courts have found that
27 bad faith or misconduct creates an inequitable result does not mean bad faith or misconduct are
28 *required* for such a finding. This conclusion is consistent with the multiple authorities which find

**GREENBERG GLUSKER FIELDS CLAMAN**
**& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

32936-00002/2741067.1 — 3 — PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT

1  that bad faith is not a requirement of alter ego. *See e.g. RRX Industries,* 772 F.2d at 546; *Sands v.*
2  *Reimers*, 50 F.3d 16 (9th Cir. 1995)

### 2. No "specter of fraud" finding required.

Defendants contend that the Ninth Circuit in *S.E.C. v. Hickey*, 322 F.3d 1123, 1129 (9th Cir. 2003) required a finding of "specter of fraud". Defendants concede that *Hickey* did not state that bad faith was a requirement for alter ego. Surreply 5:3. Rather the court in *Hickey* specifically addressed the two general rules of alter ego in California, that is, a unity of interest and ownership and inequitable result. *Id.* At 1128. However, in subsequently paraphrasing the two general rules, the court stated the rules in an abridged fashion; referencing the rules as "ownership" and a "specter of fraud" rather than "unity of interest" and avoidance of an "inequitable result." *See id.* Defendants have utilized this abridged reference as a tool to confuse the issue.

First, this Court should note that none of the cases cited in *Hickey* after the "specter of fraud" reference contain any reference to a "specter of fraud" being an element of alter ego. Surreply 5:6-17. In fact, each authority cited refers only to the two general requirements of alter ego being a unity of interest and ownership and avoidance of inequitable result. *See Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985); *Resnick*, 47 Cal. 2d at 796; *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991).

Second, *Hickey* does not even address the "inequitable result" prong of alter ego. Rather, the Ninth Circuit addressed only the first prong of unity of interest or ownership, concluding that ownership in a corporation is a necessary element of alter ego under California law. *Hickey*, 322 F.3d at 1129. Once the court found the lack of ownership, the alter ego analysis stopped there. *See id.*

It is thus improper for Defendant to use this abridged language of the Ninth Circuit to suggest that a "specter of fraud" is a requirement under alter ego when the context of the case, and the cases therein cited, do not stand for that proposition.

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**2.    No "fraudulent intent of incorporator" finding required**.

Defendant quotes *Orloff* in an attempt to assert that one of the factors of alter ego is the "fraudulent intent of the incorporators." Surreply 4:27-28. This is a misstatement. The quoted language of the Surreply specifically applies only federal law in the context of federal securities cases. *See Orloff*, 819 F.2d at 909. In fact, immediately before discussing alter ego in federal securities cases, the Ninth Circuit in *Orloff* discussed alter ego under California law, as follows:

> The California alter ego doctrine is reasonably clear and recognized by both parties. It applies where: (1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts [giving rise to liability] are treated as those of the corporation alone.

*Id.* at 908-09, quoting *RRX Industries, Inc.*, 772 F.2d at 545.

It is undisputed that California alter ego law applies here, as the law of the forum state is used to determine whether a corporation is an alter ego. *Hickey*, 322 F.3d at 1128, quoting *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir.1993). Therefore, Defendant's use of federal securities alter ego theory to support its position is misplaced.

**C.    Factual Response**

Defendants have not cited to a single reference in the record to support their Surreply argument. Rather they make generalized conclusionary allegations about the absence of evidence produced by the Plaintiff. The shortcomings of this conclusionary argument are further highlighted because Plaintiff as noted above, need not have introduced evidence of a "specter of fraud" or even of bad faith, but rather only evidence showing the disregard of the corporate existence and an *inequitable* result. On these two scores there is no shortage of evidence to address Defendants arguments:

a.    *Unfair to creditors*: Defendants assert that there can be no finding of alter ego unless the Court finds that Beyond Basics was set up to be "unfair to creditors." Surreply 5:19-24. Not only is this not a requirement (see above, p. 2), but Sharron's actions in causing the Debtor to advance over $500,000 of services and personnel from the Debtor contributed in part to the Debtor's demise. See Wall Expert Report, PEL **Exhibit**

1 148, p 20. This Wall funding is unrebutted by Defendants. This was unfair to creditors of

2 the Debtor, since the funds that would otherwise have been used to pay the Debtor's

3 creditors were used by Sharron to pay all of the other creditors of Beyond Basics. As

4 noted by the *Resnick* court, "[c]onditions under which a corporate entity may be

5 disregarded vary according to the circumstances in each case" and in this case the interests

6 of the creditors of the Debtor should be considered.

7       b.    *Majority Ownership*. Defendants assert that Plaintiff's cannot rely on the

8 argument that Sharron controlled Beyond Basics as the basis to find that there was a unity

9 of interest, because "majority shareholders very often take most or all decisions in small

10 corporations…" Surreply 6:10-15. Defendants misunderstand the gist of Plaintiff's

11 argument. The point is not that because Sharron controlled Beyond Basics that in and of

12 itself determines a unity of interest; rather to the contrary, if Sharron did not control

13 Beyond Basics, the Court likely would not find that there was a unity of interests. *See*

14 *Hickey*, 322 F.3d at 1129.  While control standing alone is not synonymous with a unity of

15 interest, the existence of control is a factor to consider whether there is a unity of interest.

16 Sharron clearly does not deny that he "influenced and controlled Beyond Basics…"

17 Surreply 7:15-17

18       c.    *Commingling*. Defendants assert that there was no evidence of

19 commingling.  Defendants take the narrowest view of "commingling" meaning that

20 Beyond Basics funds must be used to pay for Sharron's personal obligations. However

21 Sharron commingled at least by: (i) shifting $40,000 on Beyond Basics books as a "due

22 from Sharron" so that Sharron could increase his basis to take an additional tax loss. See

23 Plaintiff's FOF & COL, p. 16; (ii) Sharron *personally* made the decision not to enforce the

24 Shared Services Agreement, resulting in a loss of assets to the Debtor; and (iii) Sharron

25 continued to operate Beyond Basics even after the Debtor insolvency and kept the

26 proceeds. See Plaintiff's FOF & COL, p. 18.

27       d.    *Treatment of assets of Beyond Basics as Sharron's*.  While Defendants

28 argue that no evidence was introduced on this topic, the evidence throughout the case was

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

clear that although the Debtor funded Beyond Basics, Sharron was the member even though Sharron did not come out of pocket either for the initial capital contribution or for later funding. Further Sharon's manipulation of the tax loss of Beyond Basics (an asset) to his benefit, and Sharron's retention of sales proceeds from Beyond Basics, are all examples of Sharron's personal use of Beyond Basics assets. See Plaintiff's FOF & COL, pp. 14-18; Plaintiff Reply FOF & COL, pp. 11-16.

    e.    *Following corporate formalities.* While Defendants place reliance on the formation documents as evidence of compliance with this factor, compliance with the Shared Services Agreement which was most important document for the ongoing survival of Beyond Basics, was routinely ignored by Sharron. Thus even if Beyond Basics was correctly formed, an inequitable result followed due to non enforcement of the Shared Services Agreement.

    f.    *Similarities of Sharron's relationship with the Debtor and with Beyond Basics.* Defendants assert that because the Plaintiff is no longer pursing an alter ego claim as between the Debtor and Beyond Basics, that considerations of their similarities is irrelevant. Again as noted by the *Resnick* court, "[c]onditions under which a corporate entity may be disregarded vary according to the circumstances in each case" and in this case, where Sharron plundered the assets of the Debtor at his whim to fund Beyond Basics, the relationship of Beyond Basics to the Debtor still remains highly relevant:

    i.    Although the Debtor and Beyond Basics may not have had identical ownership, officers and directors, Sharron himself is the linchpin in both cases: he owned the majority interest in both entities and completely dominated both entities to suit his own personal objectives;

    ii.    Beyond Basics operated out of the same location as the Debtor;

    iii.    After the Debtor's bankruptcy, Beyond Basics operated out of Sharron's home;

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

32936-00002/2741067.1      7      PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT

|   |   |      |                                                                                     |
|---|---|------|-------------------------------------------------------------------------------------|
| 1 |   | iv.  | Beyond Basics employees were provided by the Debtor.                                |
| 2 |   | v.   | Beyond Basics was a variable interest entity: it relied on the Debtor for its funding and all operational decisions were made by Sharron on behalf the Debtor. |
| 5 |   | vi.  | All capital for Beyond Basics was provided by the Debtor even though Sharron was the member. |
| 7 |   | vi.  | Sharron set up Beyond Basics despite that it competed with the Debtor.              |

   g.   *Inadequate capitalization.* Defendant cite the Tenth Circuit case of *Cascade Energy & Metals Corp. v. Banks,* 896 F.2d 1557 (10th Cir.1990) for the proposition that a court is more likely to find an "inequitable result" in a tort action, rather than a contract action.  Surreply 11:11-25.  *Banks* however is a nonbinding, out-of-circuit case and it stands for a legal proposition that does not exist in California.  This fact was recognized by the District Court for the Eastern District of California in *King v. Emerald Energy, LLC*, as follows:

> Certain out-of-Circuit and out-of-California authorities hold that a court should not find alter ego in contract cases (as opposed to tort cases). *See, e.g., Cascade Energy & Metals Corp. v. Banks,* 896 F.2d 1557, 1577 (10th Cir.1990) … Here, however, in the absence of controlling case authority, the Court will not preclude alter ego based solely upon the contract claims at issue.

No. CV-F-09-2128 LJOMSMS, 2010 WL 3943644, at *3 (E.D. Cal. Oct. 4, 2010). California law does not differentiate between alter ego claims involving contract claims and those involving tort claims.

Defendant's reliance on *Jack Farenbaugh & Son v. Belmont Constr., Inc.,* 194 Cal. App. 3d 1023 (1987) is similarly misplaced, as that case which is a post-*Associated Vendors* case, did not specifically address the factor of inadequate capitalization.  As Defendant points out, *Jack Farenbaugh & Son* involved a company affirmatively looting all the assets of another company for the purposes of frustrating creditors of the latter—which is an entirely separate factor for consideration under *Associated Vendors*.  *See Associated Vendors, Inc.,* 210 Cal. App. 2d at 840

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

32936-00002/2741067.1    8    PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED SURREPLY AFTER ORAL ARGUMENT

(listing, as a factor separate from inadequate capitalization the "the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another"). The factor of inadequate capitalization does not require that a company be left as an empty shell. It may be found when a corporation "carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts" *Resnick*, 47 Cal. 2d at 797. "If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." *Id.*

Here, it has been amply shown that Beyond Basics was grossly undercapitalized: Sharron knew it was a "huge risk" yet nevertheless caused the Debtor to fund his initial capital contribution and ongoing funding in spite of the Debtor being in trying times. From the time of its inception through June 2013, Beyond Basics sustained losses of $520,000. *See* Plaintiff's FOF & COL, pp. 14-18. This is not the case of an unfortunate startup company that succumbed to economic events. This is the case of an entity wholly dependent on the Debtor for the direct payment of each and every cost incurred, due to the fact that the entity was grossly undercapitalized.

g. *Diversion and Manipulation of Assets*. While Defendants feebly argue that there was no diversion or manipulation of assets, Defendants ignore several items that contradict this: the initial funding of Beyond Basics by the Debtor even though Sharron was the member; the ongoing drain on the Debtor imposed by the Shared Services Agreement; the movement of debt to give Sharron basis so that he personally could take the tax losses, and the retention by Sharron of the sales proceeds of Beyond Basics even after the insolvency of the Debtor.

/ / /
/ / /
/ / /
/ / /
/ / /

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**D.  Conclusion**

The Defendants case law citations are inapposite and their factual arguments are not grounded in the evidence adduced at trial. The Court respectfully should find in favor of the Plaintiff on the alter ego claim.

DATED:  January 17, 2017

Respectfully Submitted,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP


By: */s/ Brian L Davidoff*
BRIAN L. DAVIDOFF (SBN 102654)
Attorneys for Howard Grobstein, Liquidating Trustee of the L. Scott Apparel Inc. Bankruptcy Liquidating Trust

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1900 Avenue of the Stars, 21st Floor, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):

**PLAINTIFF'S RESPONSE TO DEFENDANTS' COURT AUTHORIZED
SURREPLY AFTER ORAL ARGUMENT**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 17, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Brian L Davidoff: bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- Lloyd S Mann:  lmann@mannzarpas.com
- Courtney E Norton: cnorton@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- United States Trustee (LA):   ustpregion16.la.ecf@usdoj.gov
- Lori L Werderitch: LWerderitch@GreenbergGlusker.com, ADefelice@GreenbergGlusker.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 17, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert N. Kwan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Courtroom 1675
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 17, 2017 | Sherry Harper | /s/ Sherry Harper |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

*December 2012*

32936-00002/2582175.1